# UNITED STATES DISTRICT COURT
## ——— District of Kansas ———

UNITED STATES OF AMERICA,

      **Plaintiff,**

      **v.**             **CASE NO.   13-10200-MLB**

TERRY L. LOEWEN,

      **Defendant.**

## MOTION FOR PRETRIAL DETENTION
### (18 U.S.C. § 3142)

APPEARS NOW the United States of America, by and through Barry Grissom,

United States Attorney for the District of Kansas, Anthony W. Mattivi and David C.

Smith, Assistant United States Attorneys, and Erin Creegan, Trial Attorney,

Counterterrorism Section of DOJ's National Security Division, and submits the following

information in support of its position seeking pretrial detention of the defendant, Terry L.

Loewen.

**1.    Introduction**

After months of investigation by the Federal Bureau of Investigation (FBI), Terry

L. Loewen was arrested on December 13, 2013, as he attempted to drive a van filled with

what he believed were high-explosives onto the tarmac at Wichita Mid-Continent Airport. Loewen was attempting to detonate those explosives at the height of the pre-Christmas travel season and kill hundreds of innocent travelers.   At the time, he believed he was working with a member of al Qaida in the Arabian Peninsula (AQAP).

A complaint was filed later that day charging Loewen with one count of attempted use of a weapon of mass destruction, in violation of Title 18, United States Code, Section 2332a(a)(2)(D); one count of attempted use of an explosive device, in violation of Title 18, United States Code, Section 844(i); and one count of attempted material support to a designated foreign terrorist organization, in violation of Title 18, United States Code, Section 2339B(a).

Loewen was indicted on the same charges on December 18, 2013.   His first appearance, arraignment, and a detention hearing are scheduled before U.S. Magistrate Judge Karen M. Humphreys on December 20, 2013.

**2.    Facts**

Terry Loewen is a United States citizen and a resident of Wichita, Kansas, where he had been employed for several years as an avionics technician for an aeronautics company.    Loewen has only one prior conviction for a misdemeanor offense.

In August of this year, Loewen began communicating online with an individual who, unbeknownst to him, was an FBI employee (FBI Employee 1).    Loewen made

statements to FBI Employee 1 reflecting a desire to engage in violent jihad[1] on behalf of al Qaeda. For example, on or about August 5, 2013, during a communication, Loewen told FBI Employee 1 that he has been studying subjects like jihad and martyrdom operations, and he believes jihad is "absolutely demanded of all the Muslim[s]."    He also wrote that he hoped all Muslims would "rise up against the rest of the world."

On August 8, 2013, Loewen again wrote to FBI Employee 1, this time saying that "[b]rothers like Osama bin Laden and Anwar al Awlaki[2] are a great inspiration to me, but I must be willing to give up everything (like they did) to truly feel like a (sic) obedient slave of Allah."

On August 21, 2013, Loewen wrote the following to FBI Employee 1:

> I have numerous ideas of ways I could perform jihad in the path of Allah (swt) but outside du'a,[3] none of them are legal.    I'm 58 years old and spending my remaining years behind bars for a good reason is not out of the question for me.    . . .    If by any chance you know of someone who is active in jihad and could use an occasional influx of "help", please let me know. Short of that,

---

[1]  "Jihad" is an Arabic term meaning "holy war," and while it has many different meanings, the defendant uses it to mean violent jihad.

[2]  Prior to his death, Awlaki was a leader of al Qaeda in the Arabian Peninsula (AQAP). Awlaki helped recruit Umar Farouk Abdulmutallab, the man convicted of trying to blow up a transatlantic flight as it landed in Detroit, Michigan, on December 25, 2009.  Awlaki is also believed to be behind the foiled attack in which two ink cartridge bombs, posted in Yemen, were intercepted in Britain and Dubai on their way to Chicago in the fall of 2010.  Al Qaeda in the Arabian Peninsula (AQAP) claimed responsibility for this attempted terrorist attack.  Awlaki used the Internet to engage in direct contact with individuals to encourage violent jihad, and was involved in the publication of "Inspire" magazine.  According to open source reporting, Awlaki was killed on or about September 30, 2011, in Yemen.

[3]  "Du'a" is an Arabic term meaning invocation, prayer, or an act of supplication.

> nothing I am doing now is enough.    . . .    I just hate the kaffar[4] government and those who are following it to the Hellfire, and the sooner it and its followers get there, the better.

On August 26, 2013, Loewen mentioned providing a "tour" to FBI Employee 1 of the Wichita Mid-Continent Airport, where he worked.    Loewen thereafter commented:

> Let me preface the bottom line by saying I have become "radicalized" in the strongest sense of the word, and I don't feel Allah(swt) wants me any other way - I MUST be active in some kind of ( dare I say it) jihad to feel I'm doing something proactive for the Ummah - giving money to those who fight for the Tawheed[5]  is one that I'm definitly [sic] interested in, but direct jihad against a civliian [sic] target is not out of the question. Point being, is my having access to airport property the primary reason for the tour - if the answer is "no" then I will not bring it up again.

In the days following, Loewen continued to discuss possible terrorist operations that could be conducted at his workplace, stating he was able to escort people out on the tarmac that leads to the airliners and control tower.    Loewen stated that he could get access to bring a vehicle onto the tarmac, which would then have access to the runways, but not until January.    Loewen apologized for asking for details "before the operation is in the planning stage."    He asked FBI Employee 1 to give him some time to decide if this was the right way to go and, if he decided it was, that maybe they could then get others involved in the plot.

---

[4]  "Kaffir," or "kuffar," is a term used by Muslims, often in a derogatory manner, to describe non-Muslims.

[5]  "Tawheed," or Tawhid, is an Arabic term referring to the concept of monotheism in Islam.

On September 2, 2013, Loewen told FBI Employee 1 that "I really don't see me living through any thing I have in mind, assuming I can even pul (sic) it off."

On or about September 6, 2013, Loewen continued his efforts to engage in terrorist activities, stating to FBI Employee 1 in relevant part:

> I believe the potential for me doing more is staggering.     I have some rough ideas, but I know nothing about explosives.     Don't you think with my access to the airport that I should put that to good use? I'm sure I am not as ready as I think I am, but by next year – who knows.     Understand I have NO exxperience [sic] in things like this, but I'm willing to learn…

During communication with FBI Employee 1 on or about September 13, 2013, Loewen stated in relevant part:

> Reading about the actions of the muhajideen [sic] and actually carrying them out is two different things.     If not for my family, I would have already carried out some sort of operation – but thats my fault for putting others before Allah (swt) which I know better than to do.

On September 21, 2013, Loewen communicated with FBI Employee 1 about some Apache helicopters (U.S. military attack helicopters) that transited Mid-Continent Airport:

> It would have been possible today for me to have walked over there, shot both pilots (I don't know if they are armed or not), slapped some C4[6]  on both fuel trucks and set them off before anyone even called TSA.

Loewen went on to say that he certainly desired to learn how to perform such an operation, but that he didn't yet think he'd been given the "green light" by

Allah to do so.

In early October, Loewen and FBI Employee 1 communicated about the possibility of Loewen using his access to the airport as a means to plant some sort of explosive device.    Loewen said:

> Am I interested? Yes. I still need time to think about it, but I can't imagine anything short of arrest stopping me.    . . .    I hate this government so much for what they have done to our brothers and sisters, that to spent (sic) the rest of my life in prison without having taken a good slice out of the serpents head is unacceptable to me.

On October 7, 2013, Loewen sent numerous photographs of his airport access badge, entrance gates to the tarmac, and the devices used to access the gates.    On October 8, 2013, Loewen also told FBI Employee 1 what the various codes and colors of his badge meant.    Loewen also surmised that there were not any surveillance cameras at the gate.

On October 11, 2013, Loewen sent the following message to FBI Employee 1:

> As far as airport terminal access, I will take a drive down that way soon, but I believe with a vehicle with company logo it would be no problem.    If you like I can get a close up of the logo so a vehicle other than ours could be painted to match, there by (sic) allowing more time to modify said vehicle for an operation, and then driven through the gate.    Just a thought; I'm sure the brothers already have that figured out.    I stated last week that I would decide by today if I'm in or out - count me in for the duration.

In mid-October 2013, Loewen and FBI Employee 1 began discussing the possibility of Loewen meeting a "brother" who could assist him in preparing for an actual

---

[6]   C-4, or "Composition C-4" is a common variety of plastic explosive.

operation, although in reality the "brother" would be another FBI employee (FBI

Employee 2).    In discussing the meet, Loewen sent the following message:

> I will only bring a weapon if the brother thinks it to be advisable.
> The only reason I would see the need for one is if law enforcement
> were to show their ugly self's (sic), at which point I would start
> shooting to give the brother time to flee.

On October 25, 2013, Loewen met in person with FBI Employee 2, whom he

believed was a "brother" associated with Al Qaida in the Arabian Peninsula.[7]    During

the meeting Loewen reiterated his desire to help FBI Employee 2 with a mission to blow

up a plane with numerous people on board.

On November 8, 2013, Loewen again met in person with FBI Employee 2.

During this meeting, Loewen indicated that he was interested in becoming a martyr (i.e.

dying in the attack).    The two also discussed the possibility of finding some way of

Loewen escaping so that it would not have to be a martyrdom operation.    Loewen

acknowledged that he could travel overseas to a location where he could reside with other

brothers.

During this same meeting, Loewen and FBI Employee 2 discussed the specifics of

the operation, which included taking a vehicle-borne improvised explosive device

(VBIED) to the terminal near a number of passenger planes.    Loewen suggested that

---

[7]  Al Qaida in the Arabian Peninsula, or AQAP, is a Yemen based terrorist group that has claimed responsibility for several terrorist acts against the United States.   On or about January 19, 2010, the United States Secretary of State designated AQAP as a foreign terrorist organization under Section 219 of the Immigration and Naturalization Act, and it remains designated through the present.

another individual could come in to the terminal with a suicide vest and detonate that to coincide with the VBIED outside.    FBI Employee 2 and Loewen discussed executing this plan just prior to Christmas which would cause the greatest impact physically and economically.

On November 11, 2013, Loewen communicated with FBI Employee 1 about meeting with FBI Employee 2 three days earlier.    Using some code words previously agreed upon, Loewen told FBI Employee 1 that he and FBI Employee 2 had toured Mid-Continent Airport and Loewen had explained to FBI Employee 2 how "the deed" could be accomplished "with the least resistance."    Loewen mentioned that FBI Employee 2 had agreed to investigate whether Loewen could leave the country after the attack.

Two days later, Loewen informed FBI Employee 1 that he had reviewed aerial photographs of the airport and was investigating details concerning construction at the terminal.    Two days after that, again using code words, Loewen informed FBI Employee 1 that he was continuing to compile information about flight times, the number of commercial airliners at the terminal in the early morning hours, passenger loads, and so on.

On November 19, 2013, Loewen met with FBI Employee 2 and reiterated his desire to martyr himself with FBI Employee 2.    FBI Employee 2 told Loewen that he, Loewen, could be the navigator (*i.e.*, the individual who would give directions to the place where the device would be detonated) to the terminal if he was willing, and Loewen

agreed.    Loewen also provided FBI Employee 2 research that he had conducted on the best time to execute the attack based upon the number of people who would be boarding aircraft and the number of people who would be in the terminal.    Loewen further expressed his desire to kill as many people as possible, and he explained where to park a vehicle full of explosives to accomplish that goal.    Loewen also provided a diagram of the terminal and tarmac including distances between the gate areas.    Finally, Loewen agreed to purchase a component that would be used to detonate the explosive.    FBI Employee 2 explained to Loewen that they would need other items to complete the explosive device.    Loewen agreed to obtain those items from his workplace, and without prompting stated that he could wire the explosive device, since he does wiring as part of his employment.    They agreed on a final plan that once Loewen got gate access they would drive to the terminal in the early morning hours and detonate the device between the terminals for maximum casualties, and that both FBI Employee 2 and Loewen would die in the explosion.    Loewen later provided FBI Employee 2 with components he had taken from his place of employment.

On or about December 3, 2013, Loewen met with FBI Employee 2 and provided containers that were to be used for the explosive material.    Loewen and FBI Employee 2 discussed how the device would be constructed.    Loewen reiterated his desire to wire the device and that he would flip the switch when it came time for that.    Loewen also provided FBI Employee 2 another diagram of the terminal and marked an "X" to indicate the best place to park the vehicle to cause the most damage.    Loewen also provided

time schedules for departures at the airport and confirmed that very early morning would be the best time to execute the plan.

On December 6, 2013, Loewen renewed his airport access badge and was told that he now had gate access to the tarmac pursuant to his request.    Three days later, Loewen tested his access badge to make certain it worked, entering the property at 6:37 p.m. and leaving one minute later.

On December 11, 2013, FBI Employee 2 met with Loewen again.    Loewen wired the triggering device, and he assisted FBI Employee 2 in assembling the rest of the bomb.[8]    Both agreed that Friday, December 13, 2013, would be the best day to execute their plan, and Loewen stated that he was happy that this was going to happen soon. Later that day FBI Employee 2 spoke with Loewen, who stated that he did not go to work that day, instead spending the day writing letters to his family and making lists of what he still needed to do.

December 13, 2013, at approximately 4:45 a.m., FBI Employee 2 picked up Loewen at a local hotel.    The two drove to the location where the bomb was being stored, arriving at 4:55 a.m.    Loewen finished wiring the device, rendering it operational.    At approximately 5:19 a.m., Loewen and FBI Employee 2 departed their location and began their trip to Wichita Mid-Continent Airport.    At approximately 5:40 a.m., FBI Employee 2 and Loewen arrived at the same gate where Loewen tested his

---

[8]    All of the explosive material used in this device was inert.

badge on December 11, 2013.    At approximately 5:42 a.m. Loewen exited the vehicle and attempted to use his badge twice on the card reader access panel in order to gain entry to the tarmac.[9]    The badge and the code used by Loewen were unique to him.    The entry code was validated by the security system, and the gate would have opened had it not been disabled.    Loewen was taken into custody after his two attempts at opening the gate.

In a search of Loewen's house on December 13, 2013, agents found a letter dated December 11, 2013 that Loewen had left for a family member.    The letter describes Loewen's intent to conduct a martyrdom operation.    It reads in part:

> By the time you read this I will – if everything went as planned – have been martyred in the path of Allah.    There will have been an event at the airport which I am responsible for.    The operation was timed to cause maximum carnage + death.    . . .    My only explanation is that I believe in jihad for the sake of Allah + for the sake of my Muslim brothers + sisters.    . . .    Fact is, most Muslims in this country will condemn what I have done.    . . .    I expect to be called a terrorist (which I am), a psychopath, and a homicidal maniac…

3.    **Legal Analysis and Argument**

The government has moved to detain this defendant pursuant to Title 18 United States Code, Sections 3142(e), (f)(1)(A), (f)(1)(B), (f)(1)(E), and (f)(2)(A), on the grounds that the defendant is charged with offenses that involve a crime of violence, a maximum sentence of life imprisonment, the possession of a destructive device, and a

---

[9]  The gate Loewen attempted to access had been disabled by airport police prior to his arrival at the airport.

serious risk the defendant will flee if released. The government has also invoked the presumption of detention found at 18 U.S.C. § 3142(e)(3)(C), in that the defendant is charged with attempted use of a weapon of mass destruction, in violation of 18 U.S.C. §2332a, which is an offense listed in 18 U.S.C. § 2332b(G)(5)(B), and for which a maximum term of imprisonment of ten years or more is prescribed.

The controlling statutory and case law on the issue of pre-trial detention is well-settled.   Under the Bail Reform Act of 1984 ("the Act"), 18 U.S.C. § 3141 *et seq.*, the Court must order the accused's release unless it is determined that no condition or combination of conditions will reasonably assure the defendant's appearance and the safety of other persons and the community.[10]   The Act recognizes a rebuttable presumption of both a risk of flight and a danger to the community, however, in a case involving a violation of 18 U.S.C. § 2332a.[11]

Once the presumption is invoked, the burden shifts to the defendant to produce some evidence warranting release.[12]   The government remains obliged to demonstrate flight risk by a preponderance of the evidence,[13] and "must prove dangerousness to any

---

[10]   18 U.S.C. § 3142(b), (c), and (e); *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).

[11]   18 U.S.C. § 3142(e)(3)(C).

[12]   *United States v. Stricklin*, 932 F.2d 1353, 1354-55 (10th Cir. 1991).

[13]   *United States v. Burks*, 141 F.Supp.2d 1283, 1286 (D.Kan. 2001).

other person or to the community by clear and convincing evidence."[14]

In determining whether there are conditions of release that will reasonably assure the appearance of the person and the safety of any other person and the community, the judicial officer must consider the factors found in 18 U.S.C. § 3142(g).    Those factors are:    (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.[15]

Here, considering the factors enunciated in 18 U.S.C. §3142(g) in determining whether any conditions will reasonably assure the appearance of the defendant and the safety of any other person in the community, it is clear that the government has met its burden.    The defendant is charged with an egregious crime of violence.    The evidence is overwhelming that the defendant not only intended to commit the offense, but that he fully intended to inflict "maximum carnage + death" in his attempt to detonate a device that would have killed or severely injured the hundreds of people who would have been in commercial aircraft and in the terminal area at Wichita Mid-Continent Airport on the morning of December 13, 2013.    These factors by themselves compel an order of detention pending trial.

The government recognizes the defendant has little criminal history and is a

---

[14]    18 U.S.C. § 3142(b), (c), and (e); *Cisneros*, 328 F.3d at 616.

13

life-long member of the community with substantial ties to the Wichita area.

Nevertheless, the defendant spoke during the investigation about leaving the country after

the attack in order to escape responsibility for his actions.    Given these statements to

the FBI Employee, especially in light of the fact that the defendant was attempting to

brutally murder or severely injure several hundred members of the Wichita community, it

is clear his ties to the community mean little to the defendant.

Considering the factors found in 18 U.S.C. § 3142(g), it is clear this defendant

poses both a risk of flight and a danger to the community.    The government respectfully

submits that there exists no condition or combination of conditions which will reasonably

assure the defendant's appearance and the safety of the community.    Accordingly, the

defendant should be detained pending trial.

WHEREFORE, the government respectfully requests that its motion for pretrial

detention of Terry L. Loewen be granted, and that the defendant be ordered detained

pending trial of this matter.

---

[15] 18 U.S.C. § 3142(g).

Respectfully submitted,

BARRY GRISSOM
United States Attorney


 /s/ *Anthony W. Mattivi*

Anthony W. Mattivi, # 17082
Assistant United States Attorney
District of Kansas
290 Carlson Federal Building
444 SE Quincy Street
Topeka, KS 66683
(785) 295-2850 (Office)
anthony.mattivi@usdoj.gov


 /s/ *David C. Smith*

DAVID C. SMITH, # 18316
Assistant United States Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66101
(913) 551-6730 (Office)
David.Smith5@usdoj.gov


 /s/ *Erin Creegan*

ERIN CREEGAN, Virginia Bar #80265
Trial Attorney
Counterterrorism Section,
        National Security Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530
(202) 514-0127 (Office)
Erin.Creegan@usdoj.gov


15

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of December, 2013, I electronically filed the foregoing pleading with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Tim Henry
John Henderson
   Counsel for Defendant Loewen
Federal Public Defender's Office
301 N. Main Street, Suite 850
Wichita, KS 67202
Tim_Henry@fd.org
John_Henderson@fd.org


/s/ *Anthony W. Mattivi*

Anthony W. Mattivi


16