IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 13-10200-01 MLB |
| | ) | |
| TERRY L. LOEWEN, | ) | |
| Defendant. | ) | |
| | ) | |

### MOTION TO DISMISS COUNTS ONE AND TWO AND BRIEF

COMES NOW the defendant, Terry L. Loewen, by and through his counsel, Timothy J. Henry and John K. Henderson, Jr., Assistant Federal Public Defenders for the District of Kansas, and moves this Court to dismiss counts 1 and 2 of the Indictment upon statutory construction grounds.   On behalf of this motion, defendant states as follows:

Terry Loewen is charged in a three-count indictment alleging attempted use of a weapon of mass destruction in violation of 18 U.S.C. § 2332a(a)(2)(D) (count 1), attempted use of an explosive device in violation of 18 U.S.C. § 844(i) (count 2), and attempted material support for a designated foreign terrorist organization in violation of 18 U.S.C. § 2339B(a) (count 3).   *See* Docket # 9.   Count 1 states:

> On or about December 13, 2013, in the District of Kansas and elsewhere, the defendant, Terry L. Loewen, attempted, without lawful authority, to use a weapon of mass destruction against people and property within the United States and such property is used in interstate and foreign commerce, and the offense, and the results of the offense, would have effected interstate commerce.   All in violation of Title 18, United States Code, Section 2332(a)(2)(D).[1]

Indictment, Docket # 9.   Count 2 states:

> On or about December 13, 2013, in the District of Kansas and elsewhere, the defendant, Terry L. Loewen, maliciously attempted to damage and destroy, by means of an explosive device, a building, vehicle and property used in an activity

---

1   Actual statute is 18 U.S.C. § 2332a(a)(2)(D).

affecting interstate and foreign commerce.  All in violation of Title 18 U.S.C., Section 844(i).

Indictment, Docket # 9.

## ARGUMENT AND AUTHORITIES

With respect to Count 1, the term "weapon of mass destruction" is defined in the same statute at 18 U.S.C. § 2332a(c)(2) as follows:

**(c) Definitions.**---For purposes of this section---
. . .
  **(2)** the term "weapon of mass destruction" means---

   **(A)** any destructive device as defined in section 921 of this title;
   **(B)** any weapon that is designed or intended to cause death or serious bodily injury through the release, dissemination, or impact of toxic or poisonous chemicals, or their precursors;
   **(C)** any weapon involving a biological agent, toxin, or vector (as those terms are defined in section 178 of this title); or
   **(D)** any weapon that is designed to release radiation or radioactivity at a level dangerous to human life; . . .

18 U.S.C. § 2332a(c)(2).

Because the purported (inert) weapon of mass destruction employed by the FBI in this case was neither chemical, biological or radioactive in nature, as those terms are used in this statute, the definition employed herein defaults to subsection (c)(2)(A), *i.e.*, "any destructive device as defined in section 921 of this title[.]"   18 U.S.C. § 2332a(c)(2)(A).

For the purposes of count 1 of the Indictment in this case, 18 U.S.C. § 921 states:

"**(4)** The term 'destructive device' means---

   **(A)** any explosive, incendiary, or poison gas---

      **(i)** bomb, . . ."   18 U.S.C. § 921(4)(A)(i).

18 U.S.C. § 921(a)(4)(A)(i).

2

However, the definition of "destructive device" is later qualified in its definition at subsection (4)(C) to specifically hold "**The term 'destructive device' shall not include any device which is neither designed nor redesigned for use as a weapon;** . . ."  18 U.S.C. § 921(a)(4)(C) (emphasis supplied).

The design of this purported weapon of mass destruction has always been under the control of the FBI, and specifically FBI Employee # 2, and the agents that oversaw the handling of this part of their operation.  More importantly, this "weapon" was never designed to be used as a weapon due to the use of "inert" materials, *i.e.*, unreactive materials.

The United States Attorney for the District of Kansas Barry Grissom stated at his press conference in this case the afternoon of defendant's arrest on December 13, 2013, "**In fact, those explosives were inert, and they . . . it was not a bomb that would ever explode.**"  (emphasis supplied).  Later in the press conference, U.S. Attorney Grissom stated "I want to express in the strongest terms possible at no time was the airport perimeter breeched **and that at no time was any citizen or member of the traveling public in any type of danger.**"  *Id.* (emphasis supplied).  A copy of this press conference will be delivered to the Court's chambers, and to the Government by mail, as it exceeds the ten megabyte limit for electronic filing, and a conventional filing is the only method known to counsel to make it part of the record.

Long held canons of statutory construction dictate this Court follow the plain language of the statute that has been specifically defined by Congress.

> First, applying the ordinary tools of statutory construction, the court must determine "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."

*City of Arlington, Texas v. FCC*, ___ U.S. ___, 133 S. Ct. 1863, 1868 (2013), quoting *Chevron*

*U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-843 (1984).

> As in all statutory construction cases, we begin with the language of the statute. The first step "is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.[]  The inquiry ceases "if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'"[]

*Barnhart v. Sigmon Coal Company, Inc.*, 534 U.S. 438, 450 (2002).

> Courts should not rely on inconclusive statutory history as a basis for refusing to give effect to the plain language of an Act of Congress, **particularly when the Legislature has specifically defined the controverted term.**

*Hubbard v. United States*, 514 U.S. 695, 708 (1995) (emphasis supplied).

Here, Congress stated in the statute (18 U.S.C. § 2332a(c)(2)(A)) the specific definition

to be employed for the term "destructive device," *i.e.*, 18 U.S.C. § 921(a)(4).  And subsection

921(a)(4)(C) specifically excludes these very inert devices built by the FBI or its employees

and/or defendant in this case.  *See* 18 U.S.C. §921(a)(4)(C) ("The term 'destructive device' shall

not include any device which is neither designed nor redesigned for use as a weapon; . . .").  The

Tenth Circuit concurs with the jurisprudence from the Supreme Court.

> The Supreme Court has recognized that it is a "normal rule of statutory construction . . . that identical words used in different parts of the same act are intended to have the same meaning." *Sorenson v. Sec'y of the Treasury*, 475 U.S 851, 860, 106 S. Ct. 1600, 89 L.Ed.2d 855 (1986) (internal quotation marks omitted).  When Congress uses a technical term in a statute, it is presumed that it has intended that the term have the same meaning in each of the sections or subsections.  *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 576, 115 S. Ct. 1061, 131 L.Ed.2d 1 (1995) (concluding that the term "prospectus" had the same meaning under two different sections of the Securities Act of 1933).
>
> Furthermore, we recognize that this "'normal rule of statutory construction' **applies with particular force where Congress has specifically defined the term**," as here.  *SKF USA Inc. v. United States*, 263 F.3d 1369, 1381 (Fed. Cir. 2001).

4

*Sierra Club v. Seaboard Farms Inc.*, 387 F.3d 1167, 1175 (10th Cir. 2004) (emphasis supplied).

This should come as no surprise as the Tenth Circuit had previously found that "inert" weapons didn't meet the definition of "destructive device" for purposes of the Sentencing Guideline § 2K2.1.   *See United States v. Osuna*, 189 F.3d 1289, 1295 (10th Cir. 1999).   There, the government conceded error that the district court should not have included 9 inert grenades as "destructive devices."   "'Inert' hand grenades, **by definition**, are not 'destructive devices' nor can they be 'readily assembled' into 'destructive devices.'"   *Id.*, quoting *United States v. Blackburn*, 940 F.2d 107, 110 (4th Cir. 1991) (emphasis supplied).   And that "definition" in *Osuna* was the very same definition found at 18 U.S.C. § 921(a)(4), but for its organizational structure.   *Compare* 18 U.S.C. § 921(a)(4)(A), (B) and (C) with 26 U.S.C. § 5845(f).

Although the *Osuna* decision surrounded a sentencing guideline issue, it was required to reference the statutory definition of "destructive device" in another statute of the Federal Criminal Code.   *See* U.S.S.G. § 2K2.1, Comment., n. 1 ("'Destructive device' has the meaning given that term in 26 U.S.C. §5845(f)."   Section 5845(f) of Title 26 also contains the very qualifying language that is found at 18 U.S.C. § 921(a)(4)(C):

> **(f) Destructive device.**---The term "destructive device" means (1) any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket having a propellant charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device; (2) any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter, except a shotgun or shotgun shell which the Secretary finds is generally recognized as particularly suitable for sporting purposes; and (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled.  **The term "destructive device" shall not include any device which is neither designed nor redesigned for use as a weapon;** . . .

26 U.S.C. § 5845(f) (emphasis supplied). But for the differing organizational structure, this statutory subsection is almost identical to the present statute and definition applicable in this case.

However, the Court need not rely only on *Osuna* or the aforementioned canons of statutory construction to dismiss count one (and two, *infra*) based on the specific definition Congress intended to control; other courts have similarly interpreted these statutes under the above canons. For example, the Fourth Circuit, not known as a bastion of liberal thought, rendered the *Blackburn* decision, *supra*, cited by the Tenth Circuit in *Osuna* to support its holding.

> A second issue, one involving statutory construction (and, as such, a matter of law), is whether the inert grenades were "destructive devices" regardless of the ability to arm all thirty with the powder of two. . . .
>
> At its core, the legal issue is whether a person can be deemed in possession of a "destructive device" if he does not possess one of the requisite parts or ingredients needed to activate the device. . . . A defendant must possess *every* essential part necessary to construct a destructive device. *See United States v. Malone*, 546 F.2d 1182 (5th Cir. 1977) (reversing a conviction for possession of an unregistered grenade because defendant did not possess gunpowder to arm it); *see also United States v. Posnjak*, 457 F.2d 1110, 1116 (2nd Cir. 1972); ("All of the necessary components . . . must be possessed in order to possess a 'destructive device'. . . ."); *United States v. Davis*, 313 F.Supp. 710, 713 (D.Conn. 1970) ("[W]hat Congress meant by the term [destructive device] was an association of the components of a destructive device, at the same time and place, capable of being converted into a destructive device. . . .").

*Blackburn*, 940 F.2d at 109-110 (emphasis by court).

Important to the jurisprudence on these points is that a destructive device can be developed in a number of ways, but the defendant doesn't possess it simply by possessing a few essential parts, but "must possess *every* essential part necessary to construct a destructive device." *Id.* The Fifth Circuit's decision in *Malone*, *supra*, explains this point very well:

6

> The words of the statute are "from which a destructive device may be readily assembled", and no, as the government contends, "from which a destructive device may be readily assembled with addition of other parts."
>
> . . . [W]e conclude that, from a proper interpretation of the statute, the defendant cannot be guilty of the offenses charged because he did not have in his possession all of the component parts from which a destructive device might be readily assembled.  *United States v. Posnjak*, 457 F.2d 1110 (2nd Cir. 1972).
>
> We make no attempt here to define what may or may not constitute a "destructive device" or its components within the language of the statute.   What we do hold is that the complete absence of explosive material would prevent the component parts in the defendant's possession from being a destructive device.

*Malone*, 546 F.2d at 1184.   When a weapon is "inert," it is incapable of exploding.   The FBI's purported weapon of mass destruction here was, as all agree, incapable of exploding.   From the defense perspective, it need not matter if one or more than one of the essential components is missing.   All it takes is one of the essential component to be inert, whether it be the explosive material, the arming device, the detonator cord, *etc*.   If one or more components present in this case were incapable of exploding, it simply is not a "destructive device" or a "weapon of mass destruction."   Count 1 should be dismissed.

Likewise, with respect to Count 2, the Government alleges defendant attempted to damage and destroy property "by means of an explosive device" pursuant to 18 U.S.C. § 844(i). Indictment, Docket # 9.   For purposes to 18 U.S.C. § 844(i), the term "explosive" is defined in the immediate following subsection (j) which states:

> **(j)**   For the purposes of subsections (d), (e), (f), (g), (h), and (i) of this section and section 842(p), the term "explosive" means gunpowders, powders used for blasting, all forms of high explosives, blasting materials, fuzes (other than electric circuit breakers), detonators, and other detonating agents, smokeless powders, other explosive or incendiary devices within the meaning of paragraph (5) of section 232 of this title, and any chemical compounds, mechanical mixture, or device that contains any oxidizing and combustible units, or other ingredients, in such proportions, quantities, or packing that ignition by fire, by friction, by

concussion, by percussion, or by detonation of the compound, mixture, or device or any part thereof may cause an explosion.

18 U.S.C. § 844(j).

Although 18 U.S.C. § 844(j) doesn't have the specific disqualifying language in its definition as 18 U.S.C. § 921(a)(4)(C) does, it still defines "explosive" as explosive materials "in such proportions, quantities, or packing that ignition . . . **may cause an explosion**." 18 U.S.C. § 844(j) (emphasis supplied). There was not a chance these inert materials purporting to be a "bomb" could have exploded. Not only would the FBI have allowed it, we have the word of the U.S. Attorney himself that "**it was not a bomb that would ever explode . . .and that at no time was any citizen or member of the traveling public in any type of danger.**" *See* Press Conference materials provided by conventional filing due to it exceeds the data limit for electronic filings (emphasis supplied).

In other words, this "inert weapon" was not a "weapon" that meets the definition of a "destructive device" as that term is specifically defined at 18 U.S.C. § 921(a)(4)(A)(i), which is incorporated into the statute alleged in count 1 of the Indictment, *i.e.*, 18 U.S.C. § 2332a; or as "explosive" is defined at 18 U.S.C. § 844(j) for purposes of 18 U.S.C. § 844(i). As such, one of the critical elements of these charges is unable to be met, and requires this Court to dismiss both counts one and two of the Indictment.

8

WHEREFORE, for the above and foregoing reasons, defendant prays this Court dismiss Counts 1 and 2 of the Indictment on statutory construction grounds which, under these statutes, specifically preclude a finding that an "inert" device can qualify as "destructive device" or "explosive" when everyone agrees "it was not a bomb that would ever explode."

Respectfully submitted,

MELODY BRANNON EVANS
Federal Public Defender

s/Timothy J. Henry
TIMOTHY J. HENRY
KS Sup. Ct. No. 12934
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6445
Fax: (316) 269-6175
E-mail: tim_henry@fd.org

s/John K. Henderson, Jr.
JOHN K. HENDERSON, JR.
KS Sup. Ct. No. 19022
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6445
Fax: (316) 269-6175
E-mail: john_henderson@fd.org

9

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2015, I electronically filed the foregoing MOTION

TO DISMISS COUNTS ONE AND TWO AND BRIEF with the Clerk of the Court by using the

CM/ECF system which will send a notice of electronic filing to the following:

Anthony W. Mattivi
Office of United States Attorney
290 US Courthouse
444 SE Quincy
Topeka, KS 66683-3592

David C. Smith
Office of United States Attorney
500 State Avenue, Suite 360
Kansas City, KS 66101

Erin Creegan
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

One copy sent via U.S. Mail to:

Terry L. Loewen
c/o Sedgwick County Detention Facility
141 W. Elm Street
Wichita, KS   67203

| s/John K. Henderson, Jr. | s/Timothy J. Henry |
| --- | --- |
| JOHN K. HENDERSON, JR. | TIMOTHY J. HENRY |
| KS Sup. Ct. No. 19022 | KS Sup. Ct. No. 12934 |
| Assistant Federal Public Defender | Assistant Federal Public Defender |
| Federal Public Defender Office | Federal Public Defender Office |
| 301 N. Main, Suite 850 | 301 N. Main, Suite 850 |
| Wichita, KS   67202 | Wichita, KS 67202 |
| Telephone: (316) 269-6445 | Telephone: (316) 269-6445 |
| Fax: (316) 269-6175 | Fax: (316) 269-6175 |
| E-mail: john_henderson@fd.org | E-mail: tim_henry@fd.org |